UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JANET RAMSEY,<br><br>    Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>    Defendant. | No. 1:16-CV-03144-JTR<br><br>ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT |

**BEFORE THE COURT** are cross-motions for summary judgment. ECF No. 16, 17. Attorney D. James Tree represents Janet Ramsey (Plaintiff); Special Assistant United States Attorney L. Jamala Edwards represents the Commissioner of Social Security (Defendant). The parties have consented to proceed before a magistrate judge. ECF No. 7. After reviewing the administrative record and the briefs filed by the parties, the Court **GRANTS** Plaintiff's Motion for Summary Judgment; **DENIES** Defendant's Motion for Summary Judgment; and **REMANDS** the matter to the Commissioner for an immediate award of benefits.

ORDER GRANTING PLAINTIFF'S MOTION . . . - 1

## JURISDICTION

Plaintiff filed an application for Disability Insurance Benefits (DIB) on June 15, 2010, Tr. 256, alleging disability since December 17, 2009, Tr. 205, due to depression, anxiety, a bad shoulder, a "hurt left knee," and a neck injury, Tr. 248. The application was denied initially and upon reconsideration. Tr. 112-114, 118-122. Administrative Law Judge (ALJ) Timothy Mangrum held a hearing on July 20, 2012 and heard testimony from Plaintiff and vocational expert, Trevor Duncan. Tr. 41-64. Following the hearing, Plaintiff amended her onset date to January 1, 2012. Tr. 160-161. The ALJ issued an unfavorable decision on September 28, 2012. Tr. 93-102. The Appeals Council granted Plaintiff's request for review and remanded her case back to the ALJ. Tr. 108-110. The ALJ held a second hearing on August 5, 2014 and heard testimony from Plaintiff and vocational exert, Michael Swanson. Tr. 65-87. The ALJ issued a second unfavorable decision on December 12, 2014. Tr. 26-34. The Appeals Council denied Plaintiff's request for review of this decision on May 27, 2016. Tr. 1-7. The ALJ's December 12, 2014 decision became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. § 405(g). Plaintiff filed this action for judicial review on July 26, 2016. ECF No. 1, 3.

## STATEMENT OF FACTS

The facts of the case are set forth in the administrative hearing transcript, the ALJ's decision, and the briefs of the parties. They are only briefly summarized here.

Plaintiff was 48 years old at the amended date of onset. Tr. 205. Plaintiff received her GED in 1986. Tr. 249. She has a work history as an adult/senior caregiver. *Id.* Plaintiff was working part-time as an adult day care provider at the amended date of onset through the date of the second ALJ hearing. Tr. 49, 71-72.

## STANDARD OF REVIEW

The ALJ is responsible for determining credibility, resolving conflicts in

medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The Court reviews the ALJ's determinations of law de novo, deferring to a reasonable interpretation of the statutes. *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000). The decision of the ALJ may be reversed only if it is not supported by substantial evidence or if it is based on legal error. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance. *Id*. at 1098. Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the ALJ. *Tackett*, 180 F.3d at 1097. If substantial evidence supports the administrative findings, or if conflicting evidence supports a finding of either disability or non-disability, the ALJ's determination is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988).

## SEQUENTIAL EVALUATION PROCESS

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. § 404.1520(a); *see Bowen v. Yuckert*, 482 U.S. 137, 140-142 (1987). In steps one through four, the burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Tackett*, 180 F.3d at 1098-1099. This burden is met once the claimant establishes that physical or mental impairments prevent her from engaging in her previous occupations. 20 C.F.R. § 404.1520(a)(4). If the claimant cannot do her past relevant work, the ALJ proceeds to step five, and the burden shifts to the Commissioner to show that (1) the claimant can make an adjustment to

other work, and (2) specific jobs exist in the national economy which the claimant can perform. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193-1194 (9th Cir. 2004). If the claimant cannot make an adjustment to other work in the national economy, a finding of "disabled" is made. 20 C.F.R. § 404.1520(a)(4)(v).

**ADMINISTRATIVE DECISION**

On December 12, 2014, the ALJ issued a decision finding Plaintiff was not disabled as defined in the Social Security Act.

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since January 1, 2012, the amended date of onset. Tr. 28.

At step two, the ALJ determined Plaintiff had the following severe impairments: status post knee repair; dominant right shoulder strain; and substance abuse. Tr. 29.

At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. Tr. 29.

At step four, the ALJ assessed Plaintiff's residual function capacity and determined she could perform a range of light work with the following limitations: "she can only occasionally push or pull using the right upper extremity; she cannot climb ladders, ropes or scaffolds; she cannot crawl; she can occasionally kneel; frequently crouch; she can only occasionally reach overhead." Tr. 30. The ALJ identified Plaintiff's past relevant work as caregiver and concluded that Plaintiff was not able to perform this past relevant work. Tr. 32, 100.

At step five, the ALJ determined that, considering Plaintiff's age, education, work experience and residual functional capacity, and based on the testimony of the vocational expert, there were other jobs that exist in significant numbers in the national economy Plaintiff could perform, including the jobs of usher, counter clerk, and sandwich board carrier. Tr. 33. The ALJ concluded Plaintiff was not

under a disability within the meaning of the Social Security Act at any time from January 1, 2012, through the date of the ALJ's decision. Tr. 33-34.

## ISSUES

The question presented is whether substantial evidence supports the ALJ's decision denying benefits and, if so, whether that decision is based on proper legal standards. Plaintiff contends the ALJ erred by (1) failing to properly credit Plaintiff's alleged symptoms, (2) failing to properly weigh medical opinions, (3) failing to find Plaintiff's mental health impairments severe at step two, and (4) failing to include all of Plaintiff's limitations in the residual functional capacity determination.[1]

## DISCUSSION

**A.     Plaintiff's Alleged Symptoms**

Plaintiff contests the ALJ's determination that her alleged symptoms were less than fully credible. ECF No. 16 at 16-18.

It is generally the province of the ALJ to make credibility determinations, *Andrews*, 53 F.3d at 1039, but the ALJ's findings must be supported by specific cogent reasons, *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990). Absent affirmative evidence of malingering, the ALJ's reasons for rejecting the claimant's testimony must be "specific, clear and convincing." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996); *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995).

---

[1]Plaintiff characterizes the third issue as the ALJ's failure to find any non-exertional impairments in the residual functional capacity determination. ECF No. 16 at 6. However, in the text of the briefing, she argues that the ALJ failed to find her mental health impairments as severe resulting in the mental functional limitations being left out of the residual functional capacity determination. *Id*. at 18-20. Therefore, the Court has broken the issue in two, addressing step two and the residual functional capacity separately.

"General findings are insufficient: rather the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester*, 81 F.3d at 834.

The ALJ found Plaintiff less than fully credible concerning the intensity, persistence, and limiting effects of her symptoms. Tr. 30. The ALJ reasoned that Plaintiff was less than fully credible because (1) the medical evidence did not support her allegations, (2) her work activity suggested she was not disabled, and (3) she could perform light housework. Tr. 31, 99.

### 1. Medical Evidence

The ALJ's first reason for finding Plaintiff less than fully credible, that the medical evidence did not support her allegations, does not meet the specific, clear, and convincing standard. Objective medical evidence is a "relevant factor in determining the severity of the claimant's pain and its disabling effects"; however, it cannot be the sole reason the ALJ relies upon when rejecting Plaintiff's statements. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). Considering the other two reasons the ALJ provided for finding Plaintiff less than fully credible failed to meet the specific, clear and convincing standard, the ALJ's reliance on objective medical evidence is insufficient to support an adverse credibility determination.

### 2. Work Activity

The ALJ's second reason for finding Plaintiff less than fully credible, that Plaintiff's work activities suggest that she is not disabled, does not meet the specific, clear, and convincing standard.

Daily activities that are inconsistent with a claimant's allegations are a relevant credibility consideration. *Rollins*, 261 F.3d at 857. Even where a claimant's daily activities "suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent they contradict

claims of a totally debilitating impairment." *Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012).

In the September 28, 2012 decision, which was incorporated into the December 12, 2014 decision, the ALJ relied on a statement from Plaintiff that, "she sometimes cannot stand up from the couch to get her medications and that she is too tired, short of breath, and anxious to work," as inconsistent with Plaintiff's ability to work part-time. Tr. 99 *citing* Tr. 53. However, Plaintiff reported that she only works three hours a day and misses work as often as three to four times a month. Tr. 72. The fact that "sometimes" her symptoms prevent her from leaving the couch is not inconsistent with the ability to work part-time at an inconsistent rate. As such, this is not a specific, clear and convincing reason to find Plaintiff less than fully credible.

In both the ALJ's decisions, he found that the ability to work part-time was inconsistent with Plaintiff's report of disability. Tr. 31, 99. On July 7, 2010, Plaintiff reported that she had worked as a caregiver since June of 2010, working 20 hours a week and earning $10.02 an hour and this was deemed to be below substantial gainful activity. Tr. 240, 246. On the same day, but on a different from, she stated that she had worked as a caregiver from 1995 to the present for eight hours per day, five days per week for a rage of $10.02 an hour. Tr. 249. In a later, undated report, she asserted that she had been working from 2005 to the present for ten to fifteen hours a week. Tr. 314. At the July 20, 2012 hearing, she reported working 44 hours per month. Tr. 47, 49. At the August 5, 2014 hearing, she reported that she worked three hours a day Monday through Friday; however, there were some days that she could not attend work due to her impairments. Tr. 72.

The ALJ in both decisions found that Plaintiff's earnings did not exceed substantial gainful activity. Tr. 28, 95. The ALJ failed to provide how Plaintiff's statements that she could work part time five days a week was inconsistent with

her assertions of disability. In formulating the residual functional capacity, the ALJ is to assess the claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis," where "regular and continuing basis" is defined as eight hours a day, five days a week, or an equivalent work schedule. S.S.R. 96-8p. Therefore, the fact that a claimant struggled to maintain a part-time job is not inconsistent with the assertions of disability. In fact, it can be evidence supporting the assertion that a claimant is unable to maintain work at a "regular and continuing basis."

Defendant asserts that the ALJ found Plaintiff lacked credibility because she inconsistently reported the hours that she worked. ECF No. 17 at 7. However, that is not the analysis the ALJ provided in his decision. He found that "claimant's employment as a caregiver constitutes significant work activity that strongly suggests she is not disabled." Tr. 31. As such, Defendant's assertion is a *post hoc* rationalization, which cannot be considered by this Court. *See Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (The Court will "review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely.").

In conclusion, Plaintiff was able to retain part-time work as a caregiver. This evidence, however, is consistent with Plaintiff's testimony regarding her limitations and provides no support to the ALJ's conclusion that Plaintiff was not as impaired as she alleged.

**3. Housework**

The ALJ's third reason for finding Plaintiff less than fully credible, that Plaintiff reported being able to perform light housework, Tr. 99[2], does not meet the specific, clear, and convincing standard.

---

[2]This reason was expressed in the ALJ's first decision and was incorporated into the second. Tr. 31.

A claimant's daily activities may support an adverse credibility finding if (1) the claimant's activities contradict her other testimony, or (2) "the claimant is able to spend a substantial part of [her] day engaged in pursuits involving performance of physical functions that are transferable to a work setting." *Orn*, 495 F.3d at 639 (citing *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)). "The ALJ must make 'specific findings relating to [the daily] activities' and their transferability to conclude that a claimant's daily activities warrant an adverse credibility determination." *Id.* (quoting *Burch v. Barnhart,* 400 F.3d 676, 681 (9th Cir. 2005)). A claimant need not be "utterly incapacitated" to be eligible for benefits. *Fair*, 885 F.2d at 603.

The ALJ failed to make any findings as to how the ability to perform light housework was inconsistent with Plaintiff's statements or how these activities were transferable to the workplace and whether Plaintiff spent a "substantial part" of her day engaged in these activities. Therefore, this reason also fails to meet the specific, clear and convincing standard.

As discussed below, the credit-as-true rule in *Garrison v. Colvin* applies to Dr. Robertson's opinion, justifying a remand for an immediate award of benefits. 759 F.3d 995, 1020-1022 (9th Cir. 2014).

**B.      Medical Opinions**

Plaintiff argues the ALJ failed to properly consider and weigh the medical opinions expressed by Julia K. Robertson, M.D., Jamie E. Simmons, M.D., and Theodore H. Palmatier, M.D. ECF No. 16 at -166.

In weighing medical source opinions, the ALJ should distinguish between three different types of physicians: (1) treating physicians, who actually treat the claimant; (2) examining physicians, who examine but do not treat the claimant; and, (3) nonexamining physicians who neither treat nor examine the claimant. *Lester*, 81 F.3d at 830. The ALJ should give more weight to the opinion of a treating physician than to the opinion of an examining physician. *Orn*, 495 F.3d at

631. Likewise, the ALJ should give more weight to the opinion of an examining physician than to the opinion of a nonexamining physician. *Id.*

When a treating physician's opinion is not contradicted by another physician, the ALJ may reject the opinion only for "clear and convincing" reasons. *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991). When a treating physician's opinion is contradicted by another physician, the ALJ is only required to provide "specific and legitimate reasons" for rejecting the opinion. *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983). Likewise, when an examining physician's opinion is not contradicted by another physician, the ALJ may reject the opinion only for "clear and convincing" reasons, and when an examining physician's opinion is contradicted by another physician, the ALJ is only required to provide "specific and legitimate reasons." *Lester*, 81 F.3d at 830-831.

The specific and legitimate standard can be met by the ALJ setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). The ALJ is required to do more than offer his conclusions, he "must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Embrey v. Bowen*, 849 F.2d 418, 421-422 (9th Cir. 1988).

### 1. Julia K. Robertson, M.D.

On March 7, 2012, Dr. Robertson completed a Medical Report form and opined that Plaintiff would have to lie down four hours a day and that she would miss an average of three days a month due to her medical impairments if she were attempting to work a forty hour work week. Tr. 532-533. The ALJ rejected this opinion because (1) she did not appear to know Plaintiff was working part-time, and (2) that the opinion was "incongruent with the rest of the medical record and the claimant's ongoing work activities." Tr. 31, 100. Plaintiff appears to concede that specific and legitimate is the applicable standard for this opinion. ECF No. 16

at 8-9.

The ALJ's reasons fail to meet the specific and legitimate standard. First, the ALJ's conclusion that Dr. Robertson was not aware of Plaintiff's part-time work is not supported by the record. While her treatment reports do not include a reference to any work status, she was provided records from other providers who did state that Plaintiff was employed. Tr. 426, 428, 430, 432, 435-437, 478, 480, 485-487. As such, the ALJ's first reason fails.

The ALJ's second reason, that the opinion was "incongruent" with the medical evidence in the record, also fails to meet the specific and legitimate standard. Here, the ALJ made the assertion, but failed to state how that opinion was inconsistent with the record. The ALJ is required to do more than offer his conclusions, he "must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Embrey*, 849 F.2d at 421-422. As such, the ALJ did not provide a legally sufficient reason for rejecting Dr. Robertson's opinion.

**2. Jamie E. Simmons, M.D.**

On June 25, 2014, Dr. Simmons completed a Mental Source Statement in which she opined that Plaintiff was markedly limited in three areas of mental functioning and moderately limited in four additional areas of mental functioning. Tr. 615-617. Additionally, Dr. Simmons opined that Plaintiff would likely be off-task twelve to twenty percent of the time during a forty-hour work schedule. Tr. 617.

The ALJ gave Dr. Simmons's opinion "little weight" because (1) she did not assign Plaintiff a residual functional capacity assessment, (2) the narrative section of the opinion was based on Plaintiff's self-reports, and (3) she expressed her opinion on a check-the-box form. Tr. 31.

The ALJ's first reason, that Dr. Simmons failed to express her opinion in a residual functional capacity assessment form, is not legally sufficient. A residual

functional capacity assessment is the most a claimant can do despite her limitations. 20 C.F.R. § 404.1545(a)(1). A residual functional capacity assessment is part of the five-step evaluation process that the ALJ is responsible for determining. *See* 20 C.F.R. §§ 404.1502(j); 404.1520(a)(4)(iv). In doing so, the ALJ is to assess the nature and extent of the claimant's mental limitations and restriction. 20 C.F.R. § 404.1545(c). Dr. Simmons's opinion addressed twenty different functional abilities and the degree to which Plaintiff was limited in each ability. Tr. 615-617. The severity of each limitation had a definition, such as markedly limited was defined as "[v]ery significant interference with basic work-related activities i.e., unable to perform the described mental activity for more than 33% of the work day," and moderately limited was defined as a "[s]ignificant interference with basic work-related activities i.e., unable to perform the described mental activity for at least 20% of the work day up to 33% of the work day." Tr. 615. As such, the opinion provided the percentage of the day Plaintiff was capable of each ability. Dr. Simmons's opinion addressed the extent of Plaintiff's abilities and limitations. This was to be considered by the ALJ, whose job it was to form the residual functional capacity assessment. Therefore, this reason fails to meet the specific and legitimate standard.

The ALJ's second reason for giving Dr. Simmons's opinion little weight, that the narrative section was based on Plaintiff's self-reports, is not legally sufficient. A doctor's opinion may be discounted if it relies on a claimant's unreliable self-report. *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005); *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). But the ALJ must provide the basis for his conclusion that the opinion was based on a claimant's unreliable self-reports. *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014). Here, the ALJ attempted to provide such a basis by referencing a portion of the narrative, that "she lost a job because she could not understand the paperwork." Tr. 31. However, the ALJ failed to support his assertion that Plaintiff was

unreliable in her self-reports. *See supra.* As such, this reason fails to meet the specific and legitimate standard.

The ALJ's third reason for giving Dr. Simmons's opinion "little weight," that it was based on a check the box form, fails to meet the specific and legitimate standard. An ALJ may reject check-the-box reports that do not contain any explanation of the bases for their conclusions. *Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996). The Ninth Circuit has found that check-the-box forms that are "supported by numerous records" are "entitled to weight that an otherwise unsupported and unexplained check-box form would not merit." *Garrison v. Colvin*, 759 F.3d 995, 1013 (9th Cir. 2014). Here, Dr. Simmons provided a narrative regarding the limitations. Tr. 617. As such, this form is not unexplained. Additionally, Plaintiff testified that she had been treated by Dr. Simmons for nearly two years. Tr. 73. Therefore, the ALJ erred in his treatment of the opinion.

**3.    Theodore H. Palmatier, M.D.**

In March of 2010, Dr. Palmatier limited Plaintiff to light duty work but no lifting greater than fifteen pounds. Tr. 369. By August of 2010, he limited her to light duty, "which would include no reaching above shoulder height, [and] no lifting greater than 15 pounds." Tr. 383. The ALJ failed to address Dr. Palmatier's opinions in his decision.

Defendant asserts that Dr. Palmatier's opinions were neither significant nor probative and did not need to be discussed. ECF No. 17 at 15. The Court recognizes that the opinions were provided prior to Plaintiff's onset date. However, the opinions the ALJ gives significant weight, Dr. Tesar and Dr. Staley, were both penned prior to the date of onset. Tr. 99. As such, there is an incongruence in the ALJ's reliance on two early opinions and the failure to address a third opinion from the same time period. The ALJ erred in not considering the opinion. However, Dr. Robertson's opinion, if credited as true, is sufficient to support a remand for benefits. *See infra*. Therefore, since this opinion predates the

alleged onset date, it would not be judicially efficient to remand this case simply for the ALJ to address this opinion.

C.  **Step Two**

Plaintiff asserts that the ALJ erred in his step two determination by finding that her mental health impairments were not severe. ECF No. 16 at 18-19.

Step-two of the sequential evaluation process requires the ALJ to determine whether or not the claimant "has a medically severe impairment or combination of impairments." *Smolen*, 80 F.3d at 1290 (citation omitted). "An impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal effect on an individual[']s ability to work.'" *Id*. at 1290. The step-two analysis is "a *de minimis* screening device to dispose of groundless claims." *Id*. In his step two determination, the ALJ found Plaintiff's depression and attention deficit hyperactivity disorder to be not severe. Tr. 29.

Considering the ALJ erred in his treatment of the opinion of Dr. Simmons concerning Plaintiff's mental health limitations, remanding the case for additional considering of the step two determination would appear to be appropriate. However, the record is sufficient to remand for an immediate award of benefits based on Dr. Robertson's opinion and Plaintiff physical impairments. *See infra*. Therefore, it would not be judicially efficient to send the case back with instructions to make a new step two determination.

D.  **Residual Functional Capacity**

Plaintiff challenges the ALJ's residual functional capacity determination by asserting that the ALJ failed to include all her limitations resulting from all of her impairments, specifically omitting the limitations resulting from Plaintiff's mental health. ECF No. 16 at 18-19. In determining a claimant's residual functional capacity, the ALJ is to consider all of the claimant's impairments, both severe and not severe. 20 C.F.R. § 404.1545(a)(2). However, as addressed below, by

crediting Dr. Robertson's opinion as true, the record is sufficient based on Plaintiff's physical limitations to remand the case for an immediate award of benefits.

**REMEDY**

Plaintiff asserts that the case should be remanded for an immediate award of benefits arguing that the improperly discredited evidence should be considered. ECF No. 16 at 20. The Ninth Circuit has set forth a three part standard for determining when to credit improperly discounted medical opinion evidence as true: (1) the record has been fully developed and further administrative proceedings would serve no purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting the evidence in question; and (3) if the improperly discredited evidence were credited as true the ALJ would be required to find Plaintiff eligible for benefits. *Garrison*, 759 F.3d at 1020.

Here, the first standard is met as the record pertaining to Plaintiff's physical impairments is fully developed. Second, the ALJ failed to provide legally sufficient reasons for discounting Dr. Robertson's opinion, *see supra*. Third, if Dr. Robertson's opinion were credited as true, the ALJ would be required to find Plaintiff eligible for benefits. The opinions regarding Plaintiff's physical abilities that the ALJ relied were Dr. Tesar's opinion dated June 22, 2010, Dr. Stanley's opinion dated February 17, 2011, and Dr. Scottolini's opinion dated May 20, 2011. Tr. 99. All these opinions predated the January 1, 2012 alleged date of onset making them of limited relevance. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1165 (9th Cir. 2008) ("Medical opinions that predate the alleged onset of disability are of limited relevant."). Additionally, two separate vocational experts testified that missing work at the rate opined by Dr. Robertson would be work preclusive. Tr. 63, 83. Therefore, the Court finds it appropriate in this case to credit Dr. Robertson's opinion as true and remand the proceedings for an immediate award of benefits.

# CONCLUSION

Accordingly, **IT IS ORDERED:**

1. Defendant's Motion for Summary Judgment, **ECF No. 17**, is **DENIED**.

2. Plaintiff's Motion for Summary Judgment, **ECF No. 16**, is **GRANTED** and the matter is **REMANDED** to the Commissioner for an immediate award of benefits.

3. Application for attorney fees may be filed by separate motion.

The District Court Executive is directed to file this Order and provide a copy to counsel for Plaintiff and Defendant. **Judgment shall be entered for Plaintiff** and the file shall be **CLOSED**.

DATED September 5, 2017.



_____
JOHN T. RODGERS
UNITED STATES MAGISTRATE JUDGE